Timothy Peter **RALBOVSKY,** aka **James J. Ralbovski, aka James J. Ralbovsky, aka Timothy Ralbovski, Petitioner,**

v.

**A.P. KANE, Warden, Respondent.**

No. 04–1041–CJC (RC).

United States District Court,
C.D. California.

Dec. 16, 2005.

---

Timothy Peter Ralbovsky, pro se.

Taylor T. Nguyen, Deputy Attorney General, San Diego, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CARNEY, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On April 26, 2002, in Orange County Superior Court case nos. 01HF0611 and 01CF2107, petitioner Timothy Peter Ralbovsky, aka James J. Ralbovski, aka James J. Ralbovksy, aka Timothy Ralbovski, pursuant to written plea agreements, pleaded guilty to, and was convicted of, one count of sale or transportation of a controlled substance in violation of California Health & Safety Code ("H.S.C.")

§ 11352(a), one count of unlawful taking of vehicle in violation of California Vehicle Code § 10851(a), one count of receiving stolen property in violation of California Penal Code ("P.C.") § 496(a), one count of possession of a controlled substance in violation of H.S.C. § 11350(a), and one count of being under the influence of a controlled substance in violation of H.S.C. § 11550(a), and petitioner also admitted he had six prior "strike" convictions within the meaning of California's Three Strikes law, P.C. §§ 667(b)-(i) and 1170.12(a)-(d), and three prior convictions for which he served a prison term and did not remain free of custody for five years thereafter within the meaning of P.C. § 667.5(b). Lodgment nos. 3–4, 23 at 4–9. Pursuant to the plea agreements, the trial court struck five of petitioner's prior "strike" convictions under *People v. Superior Court (Romero)*, 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 (1996), and sentenced petitioner to 14 years and eight months in state prison. Lodgment nos. 4–5, 23 at 1–3, 9–11.

On December 5, 2002, petitioner filed a habeas corpus petition in the Orange County Superior Court challenging his convictions and sentence, and that petition was denied in a written opinion on January 3, 2003. Lodgment nos. 6–7, 24. On January 28, 2003, petitioner filed a habeas corpus petition in the California Court of Appeal, which denied the petition on April 10, 2003. Lodgment nos. 8–9. On August 21, 2003, petitioner filed a habeas corpus

petition in the California Supreme Court, which denied the petition on June 9, 2004. Lodgment nos. 10, 19–20.[1]

## II

In pleading guilty to the charge of sale of a controlled substance, petitioner admitted that, "[o]n 3/19/2001[,] in Orange County, [he] willfully [and] unlawfully sold a usable amount of heroin." Lodgment no. 3 at 5. As to the other charges, petitioner admitted:

On May 9, 2001, in Orange County, I willfully [and] unlawfully drove [and] possessed a 1999 Honda Civic without the consent of the owner [and] with the intent to temporarily or permanently deprive the owner of title or possession [and] knowing that vehicle to be stolen; I also willfully [and] unlawfully possessed a usable amount of heroin, [and] was under the influence of heroin.

*Id.* at 2.

## III

On August 25, 2004, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions and sentence. On December 13, 2004, respondent filed a motion to dismiss, arguing the petition is a "mixed" petition containing an unexhausted claim. However, on January 4, 2005, this Court denied respondent's motion to dismiss and ordered respondent

---

1. On November 14, 2003, petitioner filed a habeas corpus petition challenging the execution of his sentence in the Monterey County Superior Court, which denied the petition in a written opinion on December 8, 2003. Lodgment nos. 11–12. On December 18, 2003, petitioner filed a habeas corpus petition in the California Court of Appeal, which denied the petition on February 26, 2004. Lodgment nos. 15–16. On January 11, 2004, petitioner filed a second habeas corpus petition challenging the execution of his sentence in the

Monterey County Superior Court, which denied the petition in a written opinion on January 29, 2004. Lodgment nos. 13–14. On February 18, 2004, petitioner filed another habeas corpus petition in the California Court of Appeal, which denied the petition on March 25, 2004. Lodgment nos. 17–18. Finally, on April 1, 2004, petitioner filed a second habeas corpus petition in the California Supreme Court, which denied the petition on February 23, 2005. Lodgment no. 19–20.

to address the merits of petitioner's claims. On February 4, 2005, respondent filed an answer to the petition, and on May 29, 2005, petitioner filed a reply.

Petitioner raises the following claims for federal habeas relief in the pending petition:

Ground One—Petitioner's trial counsel was ineffective for: (a) failing to appear at arraignments and failing to make "beneficial" pretrial motions; (b) failing to investigate and obtain facts and evidence beneficial to petitioner's case; (c) failing to investigate a favorable and available alibi witness; (d) failing to challenge substantive and procedural defects in the prosecution's case and abandoning petitioner "at a critical stage of the pre-trial and sentencing proceedings"; (e) coercing petitioner to plead guilty "because he— trial counsel—was unprepared for, and, unwilling to prepare for trial"; (f) failing to investigate all available defenses before advising petitioner to plead guilty; (g) failing to determine that one or more sentencing enhancements were invalid; (h) failing to challenge petitioner's erroneous probation report; (i) failing to consult with petitioner about the appeal process and failing to file a notice of appeal; (j) failing to subject the prosecution's case "to a reasonable adversarial test"; and (k) failing "to abstain from ex parte communications—detrimental to petitioner—with the prosecution" (Petition at 6, 6a);

Ground Two—The trial court violated petitioner's right to due process by imposing an aggregate sentence in excess of that authorized by statute (Petition at 6);

Ground Three—The trial court violated petitioner's due process rights by using one prior conviction to impose two separate sentence enhancements (Petition at 6–7);

Ground Four—The trial court violated petitioner's rights to due process and a jury trial by imposing the "aggravated/upper" term of five years on the principal count (Petition at 7);

Ground Five—The trial court violated petitioner's due process rights by imposing consecutive rather than concurrent sentences, resulting in an aggregate sentence in excess of that authorized by statute (Petition at 7a);

Ground Six—Petitioner's convictions are invalid because they are the product of guilty pleas that were not voluntary and intelligent (Petition at 7b–7d);

Ground Seven—The enhancement of petitioner's current sentence under the Three Strikes law by a prior conviction (plea) in which the underlying criminal conduct occurred prior to the enactment of the Three Strikes law violates petitioner's prior plea agreement (Petition at 7e–7f);

Ground Eight—The enhancement of petitioner's current sentence under the Three Strikes law is unconstitutional because the Three Strikes law is "void for vagueness" (Petition at 7g);

Ground Nine—The enhancement of petitioner's current sentence under the Three Strikes law violates the equal protection clause (Petition at 7h–7i);

Ground Ten—The enhancement of petitioner's current sentence under the Three Strikes law as a result of prior convictions in which the criminal conduct occurred prior to the enactment of the Three Strikes law violates the ex post facto clause (Petition at 7j);

Ground Eleven—The enhancement of petitioner's current sentence under the Three Strikes law is unconstitutional because the Three Strikes law violates the separation of powers doctrine (Petition at 7k);

Ground Twelve—The enhancement of petitioner's current sentence under the Three Strikes law violates the double jeopardy clause (Petition at 7l–7n);

Ground Thirteen—The California Department of Corrections is violating petitioner's rights to due process and equal protection by improperly limiting the amount of post-sentence conduct credit petitioner can earn (Petition at 7o–7p); and

Ground Fourteen—The California courts violated petitioner's right to due process by denying him "a complete and meaningful review" of the claims raised in his various habeas corpus petitions (Petition at 7q).

## DISCUSSION

## IV

 The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991); *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir.2001). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.1994); *Fields v. Calderon*, 125 F.3d 757, 761–62 (9th Cir.1997), *cert. denied*, 523 U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962

(1998). Under the adequate and independent state grounds doctrine, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729, 111 S.Ct. at 2553; *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *Melendez v. Pliler*, 288 F.3d 1120, 1124 (9th Cir.2002).

 In Grounds Two through Five, petitioner claims the trial court committed a variety of errors in calculating his sentence. However, these claims were raised by petitioner for the first time in his habeas corpus petition to the Orange County Superior Court, Lodgment no. 6,[2] which the Superior Court denied on January 3, 2003. Lodgment no. 7. In denying the petition, the Superior Court held petitioner waived these claims:

> [I]n entering a guilty plea and admitting the prior strike allegations, petitioner secured a determinate state prison term and the dismissal of five out of six prior strike convictions that could have subjected petitioner to an indeterminate life term in state prison. By agreeing to plead guilty and receiving the benefits of the indicated sentence, petitioner waived any sentencing errors and is now estopped from challenging the validity of his sentence on habeas corpus.

**2.** Petitioner also raised Grounds Two through Five in his subsequent habeas corpus petitions to the California Court of Appeal and the California Supreme Court, which were both denied without comment. Lodgment nos. 8–10, 19–20. Such "silent" denials are generally considered denials on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "where, as here, the last reasoned opinion on

[a] claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Thus, in this case, the denials of Grounds Two through Five by the California Court of Appeal and the California Supreme Court do not affect the Superior Court's procedural ruling.

Lodgment no. 7 at 4. Based on the Superior Court's ruling, respondent contends Grounds Two through Five have been procedurally defaulted for purposes of federal habeas review. Respondent is correct.

■ A state procedural rule is considered "independent" if it is not interwoven with federal law. *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001). "A state law ground is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" *Park v. California,* 202 F.3d 1146, 1152 (9th Cir.), *cert. denied,* 531 U.S. 918, 121 S.Ct. 277, 148 L.Ed.2d 202 (2000) (quoting *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985)). Here, the rule upon which the Orange County Superior Court relied in holding Grounds Two through Five have been waived by petitioner is based purely on state policy concerns, and not federal law, as articulated by the California Supreme Court:

> Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process.

*People v. Hester,* 22 Cal.4th 290, 295, 92 Cal.Rptr.2d 641, 644, 992 P.2d 569 (2000). Thus, the rule the Orange County Superior Court invoked is independent of federal law.

■■ A state procedural rule is considered "adequate" if it was "firmly established and regularly followed" at the time the state court applied it. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1052 (9th Cir.2004); *see also Melendez,* 288 F.3d at 1124 ("To be 'adequate,' the state procedural bar must be 'clear, consistently applied, and well-established at the time of petitioner's purported default.'" (citation omitted)). In determining whether a particular rule is adequate to bar federal review, courts utilize a burden-shifting analysis. First, the State must plead the existence of the rule as an affirmative defense. Then the burden shifts to the petitioner, who may satisfy the burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." Finally, if the petitioner does so, the ultimate burden of proving adequacy returns to the State. *Bennett v. Mueller,* 322 F.3d 573, 585–86 (9th Cir.), *cert. denied,* 540 U.S. 938, 124 S.Ct. 105, 157 L.Ed.2d 251 (2003). Here, respondent satisfied its initial burden by pleading the existence of the rule as an affirmative defense to Grounds Two through Five. Answer at 11–13, 15–16, 20. However, petitioner has utterly failed to respond to respondent's defense; thus, the rule invoked by the Orange County Superior Court is adequate.[3]

---

3. Indeed, there are numerous published cases invoking the bar to consideration of the merits of sentencing error claims in appeals from plea bargains. *See, e.g., Hester,* 22 Cal.4th at 295, 92 Cal.Rptr.2d at 644–45, 992 P.2d 569;

*People v. Chatmon,* 129 Cal.App.4th 771, 773, 28 Cal.Rptr.3d 859, 860 (2005); *People v. Flood,* 108 Cal.App.4th 504, 508, 133 Cal. Rptr.2d 516, 519 (2003); *People v. Couch,* 48

■ When a state prisoner "has defaulted his federal claims in state court under an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565; *Zichko,* 247 F.3d at 1022. Here, petitioner has proffered nothing to show cause for his default, or prejudice from its application, or that failure to consider Grounds Two through Five would be a miscarriage of justice. Accordingly, there is no good cause to excuse petitioner's procedural default of Grounds Two through Five, and the Court will not consider those claims.

**V**

Petitioner's remaining claims must be considered in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), which "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court denied all of the remaining claims on the merits when it denied petitioner's two habeas corpus petitions without comment. *Hunter,* 982 F.2d at 348. However, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst,* 501 U.S. at 803, 111 S.Ct. at 2594; *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n. 2 (9th Cir.2000), *cert. denied,* 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001). Thus, in addressing Grounds One, Six, Eight, Nine, Ten and Twelve, the Court will consider the reasoned opinion of the Orange County Superior Court denying those claims on the merits. *Brodit v. Cambra,* 350 F.3d 985, 987 (9th Cir.2003), *cert. denied,* 542 U.S. 925, 124 S.Ct. 2888, 159 L.Ed.2d 787 (2004). As to Grounds Seven, Eleven, Thirteen and Fourteen, which have never been the subject of a reasoned state court opinion, this Court will conduct "an independent review of the record" to determine whether the California Supreme Court's decision to deny the claims was contrary to, or involved an unreasonable application of, clearly established federal law. *Pham v. Terhune,* 400 F.3d 740, 742 (9th Cir.2005) (per curiam);

Cal.App.4th 1053, 1056–58, 56 Cal.Rptr.2d 220, 221–23 (1996).

*Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

## VI

To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Roe v. Flores–Ortega,* 528 U.S. 470, 476–77, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. *Smith v. Robbins,* 528 U.S. 259, 285–86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000); *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg,* 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Williams v. Taylor,* 529 U.S. 362, 393 n. 17, 120 S.Ct. 1495, 1513 n. 17, 146 L.Ed.2d 389 (2000).

With minor modifications, "the two-part Strickland … test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In the context of a guilty plea challenge, the first prong to consider is whether defense counsel provided "reasonably competent advice." *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); *Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370. The second prong for the court to consider

"focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *Turner v. Calderon,* 281 F.3d 851, 879 (9th Cir.2002). "In other words, … to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *Langford v. Day,* 110 F.3d 1380, 1386 (9th Cir.), *cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997). However, the question of whether the defendant suffered prejudice as the result of the alleged deficiencies may be considered by the court before determining whether counsel's performance was deficient. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed."); *Smith,* 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 (same).

Here, petitioner raises a plethora of ineffective assistance of counsel claims—all of which were tersely denied by the Orange County Superior Court, which merely stated that petitioner "fails to adequately demonstrate how any of counsel's alleged improper acts or omissions were prejudicial to his defense." Lodgment no. 7 at 2–3.

■ Petitioner initially claims defense counsel was ineffective in failing to appear at petitioner's arraignments. However, by subsequently pleading guilty, petitioner has waived this pre-plea claim. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *see also United States v. Bohn,* 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (defendant waived ineffective assistance of counsel

claim regarding pre-plea hearing when he subsequently pleaded guilty).

■ Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066; *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Turner v. Duncan*, 158 F.3d 449, 456 (9th Cir.1998). This includes a duty to investigate the prosecution's case and to follow up on any exculpatory evidence that might show a defendant's innocence or raise sufficient doubt to undermine confidence in a guilty verdict. *Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986); *Riley v. Payne*, 352 F.3d 1313, 1318 (9th Cir.2003), *cert. denied*, 543 U.S. 917, 125 S.Ct. 39, 160 L.Ed.2d 200 (2004); *Lord v. Wood*, 184 F.3d 1083, 1095 n. 8 (9th Cir.1999), *cert. denied sub nom., Lambert v. Lord*, 528 U.S. 1198, 120 S.Ct. 1262, 146 L.Ed.2d 118 (2000). To show prejudice, petitioner must demonstrate that further investigation would have revealed the favorable evidence. *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir.1996), *cert. denied*, 522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 324 (1997); *Hendricks*, 70 F.3d at 1042.

■ Petitioner contends his defense counsel was ineffective in failing to make reasonable pretrial investigations before advising petitioner to plead guilty, including filing "beneficial pretrial motions" and obtaining beneficial facts and evidence, such as a favorable alibi witness.[4] However, petitioner has provided no factual support for these claims. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.2001)

(mere speculation that witness might have given helpful information if interviewed is not enough to establish ineffective assistance), *amended by*, 253 F.3d 1150 (9th Cir.2001); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir.) (rejecting claim of ineffective assistance for failure to call witness based upon lack of affidavit from witness regarding substance of testimony), *cert. denied*, 531 U.S. 908, 121 S.Ct. 254, 148 L.Ed.2d 183 (2000). Therefore, petitioner's "conclusory suggestions that his trial . . . counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation." *Jones*, 66 F.3d at 205; *James v. Borg*, 24 F.3d 20, 26 (9th Cir.), *cert. denied*, 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994).

Petitioner also contends defense counsel was ineffective because he was unwilling to prepare for trial, and did not subject the prosecution's case-in-chief to a reasonable adversarial test. However, before petitioner pled guilty, he admitted on the record that defense counsel had conducted discovery on his behalf and had filed motions in the trial court pursuing his interests. Lodgment no. 24 at 3 of 6(45–46). In short, petitioner's claim is without merit, as well as vague and conclusory. *Dows*, 211 F.3d at 487; *Jones*, 66 F.3d at 205. Similarly, petitioner's claim that defense counsel overrode petitioner's expressed desire not to plead guilty and did not confer with petitioner regarding all available defenses are contradicted by the record, in which petitioner declared under penalty of perjury he was not threatened or forced to plead guilty and he had discussed the charges, facts, and possible defenses with his attorney. *See* Lodgment nos. 3 and 23.

---

4. Petitioner does not bother to explain the "beneficial pretrial motions" he believes his trial counsel should have filed, or identify the witness his attorney should have investigated, and in this regard, petitioner's claims are vague and conclusory. *Villafuerte v. Stewart*,

111 F.3d 616, 630–31 (9th Cir.1997), *cert. denied*, 522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998); *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir.1995), *cert. denied*, 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996).

■ Petitioner further claims defense counsel was ineffective for failing to advise petitioner that one or more of his prior "strike" convictions was invalid. However, as discussed below, petitioner has not shown that any of his prior strikes were invalid; therefore, there is no factual basis for this claim, and petitioner cannot show he was prejudiced by counsel's alleged failure. *Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370. Similarly, although petitioner complains defense counsel failed to challenge an allegedly erroneous probation report, petitioner has not shown how he was prejudiced by this alleged error since petitioner was sentenced in accordance with his plea bargain. *Id.* at 58–59, 106 S.Ct. at 370.

■ Petitioner next broadly claims defense counsel was ineffective for having "ex parte communications—detrimental to petitioner—with the prosecution." This claim is specious since petitioner's defense counsel negotiated a highly favorable plea bargain for petitioner that resolved two outstanding felony cases against him, which could have resulted in petitioner being sentenced as a third strike offender under California's Three Strikes law to 81 years in state prison—and petitioner received only 14 years. Thus, petitioner cannot show he was prejudiced by his defense counsel's negotiations with the pros-

ecutor. *Hill,* 474 U.S. at 60, 106 S.Ct. at 371.

■ Finally, petitioner claims defense counsel was ineffective in failing to consult with petitioner regarding the appeals process and not filing a notice of appeal.[5] When defense counsel has not consulted with a defendant about whether to appeal a guilty plea, as petitioner alleges, this Court must consider whether defense counsel's failure constitutes deficient performance, *Flores–Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035; *United States v. Sandoval–Lopez,* 409 F.3d 1193, 1195–96 (9th Cir.2005), or whether petitioner was prejudiced by the alleged failure to consult. To show he was prejudiced by defense counsel's alleged failure to consult with him, petitioner "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure ..., he would have timely appealed." *Flores–Ortega,* 528 U.S. at 484, 120 S.Ct. at 1038; *Sandoval–Lopez,* 409 F.3d at 1196. Here, petitioner does not claim he instructed defense counsel to file a request for a certificate of probable cause or a notice of appeal. Thus, it is not at all clear defense counsel had any reason to think that petitioner, for whom he had negotiated an excellent plea agreement, would want to appeal, and there was no nonfrivolous ground for appeal. *Flores–Ortega,* 528 U.S. at 480, 120 S.Ct. at 1036; *Sandoval–*

5. Under California law "a judgment entered upon a plea of guilty is not appealable on the merits, and irregularities not going to jurisdiction or to the legality of the proceedings will not be reviewed." *People v. Williams,* 201 Cal.App.3d 439, 443, 247 Cal.Rptr. 200 (1988); *see also* 6 Witkin & Epstein, *California Criminal Law,* Criminal Appeals, § 8, p. 242 (3d edition 2000) ("[A] judgment of conviction on a plea of guilty or no contest is not appealable unless the attack is on jurisdiction to render the judgment."); P.C. § 1237.5 ("No appeal shall be taken by the defendant from a judgment of conviction upon a plea of

guilty or nolo contendere ... except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings[; and] [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."). Here, it is unlikely petitioner had grounds to obtain a certificate of probable cause to appeal his convictions or sentence.

*Lopez,* 409 F.3d at 1196. In fact, no rational defendant in petitioner's position would want to appeal his convictions and sentence, and perhaps have the plea agreement set aside and the matter remanded for trial, since the plea agreement resolved two outstanding felony cases against petitioner, each of which could have resulted in a lengthy prison sentence for petitioner as a third strike offender under California's Three Strikes law. *See Flores–Ortega,* 528 U.S. at 480, 120 S.Ct. at 1036 ("highly relevant factor" in considering whether rational defendant would have pleaded guilty is "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.").

Therefore, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2244(d).

## VII

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf,* —— U.S. ——, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970)); *Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969); *see also Hill,* 474 U.S. at 56, 106 S.Ct. at 369 ("The longstanding test

for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'") (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).

A guilty plea is voluntary if a defendant is informed of and waives his privilege against self-incrimination, his right to trial by jury, and his right to confront witnesses. *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712; *Moran v. Godinez,* 57 F.3d 690, 699 (9th Cir.1994), *cert. denied,* 516 U.S. 976, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). Voluntariness must be demonstrated by tangible evidence in the record, as determined by the totality of circumstances surrounding the plea. *Brady,* 397 U.S. at 749, 90 S.Ct. at 1469; *Boykin,* 395 U.S. at 242, 89 S.Ct. at 1711.

A guilty plea "does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charges against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States,* 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)); *Marshall v. Lonberger,* 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983); *see also Bradshaw,* 125 S.Ct. at 2405 ("Where a defendant pleads guilty to a crime without having been informed of the crime's elements, ... the plea is invalid").

Here, the record shows that when petitioner pleaded guilty he acknowledged he understood and specifically and explicitly waived his privilege against self-incrimination, his right to trial by jury, and his right to confront witnesses. Lodgment no. 3; Lodgment no. 23 at 4–9. The petitioner was also advised of the charges against him and the possible sentence he faced if

convicted on all charges. *Ibid.* Moreover, petitioner represented that his guilty plea was made

> freely and voluntarily and with full understanding of all the matters set forth in the pleading and in [his guilty plea and that] [n]o one has made any threats, used any force against [him], [his] family or loved ones, or made any promises to [petitioner] except as set out in [his guilty plea] to convince [him] to plead guilty.

Lodgment no. 3 at 2, 5. The petitioner specifically told the trial court that no one had forced him to plead guilty or had made any promises to him other than those set forth in the plea agreements. Lodgment no. 23 at 6–7. Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity[,]" *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); *Chizen v. Hunter,* 809 F.2d 560, 562 (9th Cir.1987), and "[c]ourts generally consider such responses to be strong indicators of the voluntariness of the [petitioner's] guilty plea." *Sanchez v. United States,* 50 F.3d 1448, 1455 (9th Cir.1995).

Nevertheless, in Ground Six, petitioner claims his guilty plea was not knowingly and voluntarily entered into because he was "coerced" to plead guilty due to the "severely debilitating psychological effects endured throughout his pre-conviction detention ... includ[ing] a constant and extreme amount of pressure, fear, and immobilizing anxiety" because he was indigent, incarcerated, away from his family and friends, and facing a potential 81 years to life sentence. Petition at 7b–d.

The Orange County Superior Court denied this claim, stating:

> Court records contradict petitioner's contention that his guilty plea was improperly coerced. There are no facts indicative of prosecutorial misconduct or judicial impropriety. On the Tahl forms, petitioner represented his knowing, intelligent, and voluntary waiver of constitutional rights as well as his admission of guilt. Petitioner's written representations were corroborated by the trial court in open court. There is no factual basis to support petitioner's claim.

Lodgment no. 7 at 3.

As the Orange County Superior Court held, petitioner's claim is without merit. First, that petitioner was facing a lengthy, 81 years to life prison sentence if he went to trial and was convicted on all counts does not render his guilty plea involuntary. *See Brady,* 397 U.S. at 755, 90 S.Ct. at 1472 ("[A] guilty plea is not invalid merely because entered to avoid the possibility of a death penalty."); *Bordenkircher v. Hayes,* 434 U.S. 357, 363–64, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) ("[A]cceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process." (citations omitted)). Similarly, that petitioner was incarcerated and apart from his family and friends during pretrial proceedings does not render his guilty plea involuntary. *See, e.g., Miles v. Dorsey,* 61 F.3d 1459, 1470–71 (10th Cir.1995) ("Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary."), *cert. denied,* 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996); *United States v. Yell,* 18 F.3d 581, 582–83 (8th Cir.1994) (defendant's guilty plea was not involuntary despite claims plea was induced by stress and defendant's difficulty being separated from his family during pretrial detention).

Therefore, the California Supreme Court's denial of Ground Six was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VIII

California's Three Strikes law, which was enacted on March 7, 1994, *People v. Helms,* 15 Cal.4th 608, 610, 63 Cal.Rptr.2d 620, 621, 936 P.2d 1230 (1997), "consists of two virtually identical statutory schemes designed to increase the prison terms of repeat felons." *Ewing v. California,* 538 U.S. 11, 15, 123 S.Ct. 1179, 1182, 155 L.Ed.2d 108 (2003)(internal quotations omitted). The Supreme Court described the operation and applicability of the law, as follows:

> If the defendant has one prior "serious" or "violent" felony conviction, he must be sentenced to twice the term otherwise provided as punishment for the current felony conviction. If the defendant has two or more prior "serious" or "violent" felony convictions, he must receive an indeterminate term of life imprisonment.

*Id.* at 15–16, 123 S.Ct. at 1182–83 (internal citations and quotations omitted).

Here, petitioner admitted he had six prior "strike" convictions. However, as part of his negotiated plea agreements, the trial court dismissed five of those "strikes." As a result, petitioner was treated as a second "striker," and the sentences on each of his convictions were doubled under the Three Strikes law. In Grounds Seven through Twelve, petitioner raises myriad challenges to the Three Strikes law, both on its face and as applied to him. These claims are uniformly without merit.

**Ground Seven:**

In Ground Seven, petitioner claims the enhancement of his sentence based on a "strike" conviction that occurred prior to the enactment of the Three Strikes law violates his plea agreement on the prior "strike" conviction. However, there is no factual basis for this claim since the plea agreement on petitioner's prior "strike" conviction occurred on February 19, 1999—after the Three Strikes law was enacted. *See* Lodgment no. 3 at 3, 6. Nevertheless, petitioner contends the criminal conduct underlying the prior "strike" conviction occurred before the enactment of the Three Strikes law, and that should be sufficient. Unfortunately for petitioner, there is no evidence to support this contention. Moreover, even assuming arguendo that the criminal conduct underlying the prior "strike" conviction occurred prior to the enactment of the Three Strikes law, petitioner's claim fails since petitioner has presently absolutely no evidence showing that a provision of his prior "strike" plea agreement was that the resultant conviction could never be used to enhance a later sentence.

**Ground Eight:**

 Although "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute[,]" *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979); *United States v. Gallagher,* 99 F.3d 329, 334 (9th Cir.1996), *cert. denied,* 520 U.S. 1129, 117 S.Ct. 1274, 137 L.Ed.2d 351 (1997), "a vagueness challenge may not rest on arguments that the law is vague in its hypothetical applications, but must show that the law is vague as applied to the facts of the case at hand." *United States v. Johnson,* 130 F.3d 1352, 1354 (9th Cir.1997) (citing *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1928, 114 L.Ed.2d 524 (1991)). The test for vagueness is whether the sentencing provision fails "to give a person of ordinary intelligence fair

notice that it would apply to the conduct contemplated." *United States v. Rearden,* 349 F.3d 608, 614 (9th Cir.2003), *cert. denied,* —— U.S. ——, 125 S.Ct. 32, 160 L.Ed.2d 32 (2004); *Johnson,* 130 F.3d at 1354.

▄ In Ground Eight, petitioner claims the Three Strikes law is unconstitutionally vague because it does not make clear that prior convictions incurred before its enactment can count as "strikes." Here, as discussed above, since petitioner has not shown that his prior "strike" conviction occurred before the enactment of the Three Strikes law, there is no factual basis for this claim.

Moreover, the Orange County Superior Court denied this claim summarily, holding simply that "[t]he Three Strikes law is not void for vagueness." Lodgment no. 7 at 5 (citation omitted). Under the Three Strikes law, petitioner was sentenced as a second "striker" to "twice the term otherwise provided as punishment for the current felony conviction." P.C. § 667(e)(1). Prior felonies that qualify as "strikes" include "[a]ny offense defined in subdivision (c) of [P.C.] Section 667.5 as a violent felony or any offense defined in subdivision (c) of [P.C.] Section 1192.7 as a serious felony in this state." P.C. § 667(d)(1).[6] This language is more than adequate to give a person of ordinary intelligence fair notice that, if he has a prior qualifying felony conviction, his sentence for any future felony conviction will be doubled.

Further, any ambiguity stemming from any other provision in the Three Strikes law, such as the provision that states "[t]he determination of whether a prior conviction is a prior felony conviction for purposes of subdivisions (b) to (i), inclusive, shall be made upon the date of that prior conviction[,]" P.C. § 667(d)(1), was resolved long before petitioner's current plea bargain. *See, e.g., People v. Diaz,* 41 Cal. App.4th 1424, 1428–29, 49 Cal.Rptr.2d 252, 254 (1996) (holding convictions occurring prior to March 7, 1994, may be used as strikes); *Gonzales v. Superior Court,* 37 Cal.App.4th 1302, 1311, 44 Cal.Rptr.2d 144, 149 (1995) (same). Thus, the Three Strikes law, as applied to petitioner, is not unconstitutionally vague.

**Ground Nine:**

▄ In Ground Nine, petitioner claims the enhancement of his sentence violates the equal protection clause because the statute is not applied even-handedly within California.[7] Specifically, petitioner claims that Orange County has a general policy of invoking the Three Strikes law where the current felony is not itself a "strike," whereas Los Angeles and San Francisco have the opposite general policy.

The Orange County Superior Court denied this claim, noting that "[a]bsent a showing that charging decisions are made on the basis of race or any other improper classification, differences in the application of the Three Strikes law by local prosecutors do not rise to the level of denial of equal protection." Lodgment no. 7 at 5 (citations omitted). Here, as the Superior Court aptly noted, petitioner has not shown that the decision to treat him as a second "striker" was based on any improp-

---

6. P.C. §§ 667.5(c) and 1192.7(c) set forth lengthy enumerated lists of specific offenses.

7. The equal protection clause of the Fourteenth Amendment "creates no substantive rights[,]" but rather "embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v.*

*Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997); *see also City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)(equal protection clause "is essentially a direction that all persons similarly situated should be treated alike").

er classification, and, moreover, he has utterly failed to identify any "similarly situated" defendant in Los Angeles or San Francisco County who was treated differently than he was. *See McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991)(in order to prevail on equal protection claim, petitioner must show similarly-situated individuals have systematically received more favorable treatment). Accordingly, petitioner's equal protection claim fails.

**Ground Ten:**

■ In Ground Ten, petitioner claims that using a prior "strike" conviction occurring before the enactment of the Three Strikes law to enhance his sentence violates ex post facto principles.[8] However, as discussed above, there is no factual basis for this claim since petitioner's prior "strike" conviction occurred after the enactment of the Three Strikes law.

■ The Orange County Superior Court addressed this claim and summarily denied it. *See* Lodgment no. 7 at 5 (citation omitted). This denial was correct since it is well-settled that the ex post facto clause is not violated when a trial court enhances a defendant's sentence on a current offense based upon a prior conviction (even a conviction suffered before the effective date of the enhancement statute—which petitioner's conviction is not). *Parke v. Raley,* 506 U.S. 20, 27, 113 S.Ct. 517, 522, 121 L.Ed.2d 391 (1992); *United States v. Kaluna,* 192 F.3d 1188, 1199 (9th

Cir.1999), *cert. denied,* 529 U.S. 1056, 120 S.Ct. 1561, 146 L.Ed.2d 465 (2000). Rather, "[f]or purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant 'offense' is the current crime, not the predicate crime." *United States v. Arzate–Nunez,* 18 F.3d 730, 734 (9th Cir.1994) (emphasis added). Here, petitioner committed his current offenses in 2001, well after the Three Strikes law was enacted. Therefore, there is no merit to this claim.

**Ground Eleven:**

■ In Ground Eleven, petitioner claims the Three Strikes law violates the separation of powers doctrine by "extend[ing] to the Executive Branch an overly broad and influential charging discretion that infringes upon and into the Judicial's independant [sic] existence." This claim fails for the simple reason that "the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." *Sweezy v. New Hampshire,* 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957); *see also Chromiak v. Field,* 406 F.2d 502, 505 (9th Cir.1969) ("The federal constitutional doctrine of separation of judicial and executive powers applies only to the operation of the federal government and is not binding upon the states."), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970).[9]

---

8. Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law. U.S. Const. Art. I, § 9, cl. 3 and § 10, cl. 1; *Stogner v. California,* 539 U.S. 607, 610, 123 S.Ct. 2446, 2449, 156 L.Ed.2d 544 (2003). For practical purposes, the ex post facto clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corr. v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (citations omitted).

9. Petitioner also claims the Three Strikes law violates the separation of powers provision of the California Constitution. However, it is a bedrock principle of federal habeas corpus jurisprudence that relief "does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *see also Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."). Thus, this

**Ground Twelve:**

 In Ground Twelve, petitioner claims that the enhancement of his sentence under the Three Strikes law violates double jeopardy principles, as he is effectively being punished twice for his prior conviction.[10]

The Orange County Superior Court denied this claim, holding that "[a]n enhanced sentence imposed on a persistent offender is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes but as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive one." Lodgment no. 7 at 5. This rationale is correct, and reflects the same rationale as the United States Supreme Court, which holds:

> [T]he enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

*Witte*, 515 U.S. at 400, 115 S.Ct. at 2206 (quoting *Gryger v. Burke*, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948)); *see also Moore v. Missouri*, 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301 (1895)(under recidivist statute, "the accused is not again punished for the first offence" because "the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself").

---

aspect of Ground Eleven is simply not cognizable in these proceedings.

10. The double jeopardy clause protects against successive prosecutions for the same offense after an acquittal or conviction, and against multiple punishments for the same offense. *Id.* at 727–28, 118 S.Ct. at 2250;

In sum, the California Supreme Court's denials of Grounds Seven through Twelve were neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## IX

 Under California law, an inmate convicted of a non-violent felony can earn one day of "good conduct" credit against his total sentence for each day actually served, or good conduct credits of up to 50 percent of the total length of his sentence. P.C. § 2933(a); *In re Martinez*, 30 Cal.4th 29, 34, 131 Cal.Rptr.2d 921, 924, 65 P.3d 411 (2003). However, an inmate who is a second "striker" is limited to earning good conduct credits of no more than 20 percent of the total length of his sentence. P.C. §§ 667(c)(5) and 1170.12(a)(5); *Martinez*, 30 Cal.4th at 34, 131 Cal.Rptr.2d at 924, 65 P.3d 411.

In Ground Thirteen, petitioner claims that the imposition of the 20 percent limitation on him as a second "striker" violates his due process and equal protection rights because he is being treated differently than other prisoners who earn 50 percent credits under P.C. § 2933(a). However, this claim challenges the manner in which petitioner's sentence is being executed, rather than petitioner's conviction or sentence; therefore, this claim is properly brought in a habeas corpus petition before the district court where petitioner is confined, in this case the United States District Court for the Eastern District of

---

*Witte v. United States*, 515 U.S. 389, 397, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995); *Schiro v. Farley*, 510 U.S. 222, 229, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994); *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993).

California. *See Dunne v. Henman,* 875 F.2d 244, 250 (9th Cir.1989) ("The proper forum to challenge the execution of a sentence is the district where the prisoner is confined.").[11]

Nevertheless, this Court will address Ground Thirteen, *see* 28 U.S.C. § 2241(d), which fails for the simple reason that petitioner is not "similarly situated" to those offenders who are eligible for 50 percent credits because of his prior "strike" conviction! Further, there is clearly a rational basis for the differentiation, namely "the state's legitimate interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' " *Texas v. McCullough,* 475 U.S. 134, 144, 106 S.Ct. 976, 981–82, 89 L.Ed.2d 104 (1986) (quoting *Rummel v. Estelle,* 445 U.S. 263, 276, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980)).[12]

Based on the foregoing, the California Supreme Court's denial of Ground Thirteen was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## X

■ In Ground Fourteen, petitioner claims the Orange County Superior Court and California Court of Appeal violated his due process rights by denying him a "com-

plete and meaningful review" of the claims raised in the habeas corpus petitions he filed in those courts. Unfortunately for petitioner, errors occurring during state post-conviction or collateral review proceedings are not the proper subject of federal habeas review. *Ortiz v. Stewart,* 149 F.3d 923, 939 (9th Cir.1998), *cert. denied,* 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999); *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.) (per curiam), *cert. denied,* 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989). Thus, the California Supreme Court's denial of Ground Fourteen was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court within the meaning of 28 U.S.C. § 2254(d).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

Nov. 15, 2005.

---

11. In fact, petitioner recently filed habeas corpus petitions in the United States District Court for the Eastern District of California challenging another credit provision, P.C. § 2933.3, and those petitions were denied. *See Ralbovsky v. Kramer,* 2005 WL 2089838 (E.D.Cal.); *Ralbovsky v. Kramer,* 2005 WL 2562649 (E.D.Cal.),

12. Petitioner's citations to *In re Reeves,* 102 Cal.App.4th 232, 125 Cal.Rptr.2d 319 (2002),

and *In re Black,* 124 Cal.Rptr.2d 835 (2002), to support his position are unavailing. In addition to neither case having precedential value, based upon the California Supreme Court's grants of review, *see* California Rules of Court 976 and 977, both cases address wholly distinct limitation on post-sentence credit accrual, P.C. § 2933.1, which provides for a 15 percent limitation for prisoners whose current offenses are violent felonies.