UNITED STATES of America,
Plaintiff–Appellee,

v.

Linda D. JOHNSON, Defendant–
Appellant.

No. 96–30126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 1997.

Decided Dec. 10, 1997.

Michael J. Kane, Anderson, Kane & Tobiason, Boise, ID, for defendant–appellant.

Barry McHugh, Assistant United States Attorney, Boise, ID, for plaintiff–appellee.

Before: WRIGHT, REAVLEY * and KLEINFELD, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Linda D. Johnson appeals her sentence for bank fraud. She challenges the constitutionality and applicability of U.S.S.G. § 2F1.1(b)(6)(B). We reject these challenges and affirm her sentence.

## I

While working as a bank teller, Johnson embezzled $1,468,205.86. She was charged with bank fraud under 18 U.S.C. § 1344 and pleaded guilty. At sentencing, the court imposed 40 months of imprisonment and five years of supervised release as well as a $50 special assessment, $12,800 in restitution, and 200 hours of community service. In calculating her sentence under the Sentencing Guidelines, the court increased her offense level under U.S.S.G. § 2F1.1(b)(6), which provides:

> If the offense—
>
> > (A) substantially jeopardized the safety and soundness of a financial institution; or
> >
> > (B) affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense,
>
> increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24.[1]

Johnson does not dispute that the bank is a financial institution, nor that she embezzled more than $1,000,000. She contends that the term "affected" renders the provision unconstitutionally vague and, alternatively, argues that the bank was not affected because it did not suffer a net financial loss from her fraud. Finally, she asks to be spared this increase in her offense level under the rule of lenity.

---

* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. After increasing the offense level to 24, the court granted a three-point reduction for accep-

tance of responsibility, resulting in an overall offense level of 21. For a defendant lacking a criminal record, the sentence range for this offense level is 37–46 months.

## II

### A. Standard of Review

■ We review de novo the constitutionality of sentencing guidelines. *United States v. Gallagher,* 99 F.3d 329, 333 (9th Cir.1996). Our review of the district court's application of the sentencing guidelines is limited by 18 U.S.C. § 3742. *United States v. Munster-Ramirez,* 888 F.2d 1267, 1268–69 (9th Cir. 1989). We must give due deference to the district court's application of the guidelines to the facts. 18 U.S.C. § 3742(e). Unless the court imposed the sentence in violation of the law, applied the guidelines incorrectly, or imposed a sentence that is both outside the applicable guideline range and unreasonable, we must affirm. 18 U.S.C. § 3742(f)(3).

### B. Constitutionality of U.S.S.G. § 2F1.1(b)(6)(B)

■ Unconstitutional vagueness challenges to the Sentencing Guidelines have been questioned as theoretically unsound, *see United States v. Wivell,* 893 F.2d 156, 159–60 (8th Cir.1990), but we have countenanced such challenges in deference to the Supreme Court's declaration that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Gallagher,* 99 F.3d 329, 334 (9th Cir.1996) (holding U.S.S.G. § 2F1.1's use of word "loss" not unconstitutionally vague) (quoting *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979)). Unless First Amendment freedoms are implicated, a vagueness challenge may not rest on arguments that the law is vague in its hypothetical applications, but must show that the law is vague as applied to the facts of the case at hand. *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1928, 114 L.Ed.2d 524 (1991); *Gallagher,* 99 F.3d at 334. The test for vagueness is whether the provision fails to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated. *See Gallagher,* 99 F.3d at 334.

Johnson observes that given the breadth of the word "affect," the provision might apply in a wide variety of circumstances. She is correct. "Affect" is defined as "to act upon; influence; change; enlarge or abridge; often used in the sense of acting injuriously upon persons and things," Black's Law Dictionary 57 (6th Ed.1990).

The provision's potential for broad applicability, however, exists only within a very narrow subset of circumstances: the defendant must have been convicted of an offense involving fraud or deceit and must have received more than $1,000,000 from that offense. Broad applicability within this context comports with Congress's purpose in enacting the provision, which was to enhance penalties for fraud affecting financial institutions. House Report No. 101–681(I), *reprinted in* 1990 U.S.C.A.A.N. 6472, 6576 & 6582. In this spirit, the Fifth Circuit held that U.S.S.G. § 2F1.1(b)(6)(B) was applicable where the fraud's effect on the financial institution was more attenuated than here. *United States v. Schinnell,* 80 F.3d 1064, 1069–70 (5th Cir.1996) (holding that wire fraud committed by business's own employee "affected a financial institution" because business had contractual right to sue its bank to recover funds lost).

■ Johnson argues also that U.S.S.G. § 2F1.1(b)(6)'s use of the phrase "substantially jeopardized the safety and soundness of a financial institution" as an alternative distinct from the phrase "affected a financial institution" renders the scope of the latter phrase unclear. We are not persuaded. The former phrase is applicable when the crime's effect on the financial institution is significant, regardless of the amount of money taken by the defendant. The latter phrase is applicable when the amount of money taken by the defendant is significant-more than $1,000,00–regardless of the degree of effect upon the financial institution, so long as there is some effect.

■ Moreover, like Johnson's other arguments, this argument fails to address the question dispositive of her vagueness challenge: Does U.S.S.G. § 2F1.1(b)(6)(B) give fair notice to a person of ordinary intelligence that it would apply to one who defrauds a bank of more than $1.4 million? We hold that it does.

## C. Applicability of U.S.S.G. § 2F1.1(b)(6)(B)

 Alternatively, Johnson argues that U.S.S.G. § 2F1.1(b)(6)(B) was not applicable here because the bank was not affected by her fraud, having recovered its financial loss from restitution and its bonding company. This argument also fails. First, the court found that the bank did suffer an unreimbursed financial loss totalling approximately $500,000. That included a $50,000 deductible under the bank's fidelity bond, legal expenses, auditors' fees, and wages for extra staff hours spent dealing with the offense.

 Second, even if the bank had fully recovered its financial loss, it still would have been "affected" by Johnson's fraud. To argue otherwise would be to argue that one who is injured and recovers was never injured. The argument is absurd.

The district judge said it well:

"[A] person of ordinary intelligence would certainly realize that embezzling over $1,000,000 from a small local lending institution like the victim here would constitute conduct affecting the bank."

The judge added that the effect here was "profound."

Additionally, Johnson's thievery affected the bank in non-financial ways. It damaged employee morale and customer relationships, marred the bank's reputation and influenced the bank's immediate and long-term operations and policies. Employees spent substantial time dealing with the fraud, and as a result of the incident, the bank revised its policy on customer relations and hired a full-time internal auditor. Finally, Johnson's fraud affected the bank by rendering its records false until the offense was revealed and the resulting audit was complete.

### III

 Johnson argues that U.S.S.G. § 2F1.1(b)(6)(B) should not be applied to her under the rule of lenity. Because the guideline is not ambiguous, we cannot apply that rule here. *See Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991); *United States v. Basinger,* 60 F.3d 1400, 1410 (9th Cir.1995).

The sentence is AFFIRMED.